[Western Union Telegraph Co. v. West.]

# Western Union Telegraph Co. *v.* West.

## *Damages for Delay in Delivery of Message.*

(Decided Feb. 10, 1910.  51 South. 740.)

1. *Telegraphs and Telephones; Delay in Delivery; Damages; Evidence.*—Where the action was for damages for the delay in delivery of a message sent by the wife to the brother of the husband announcing the death of the husband, and requesting the brother to come at once, as assistance was needed, the message was of such a character as that it was proper for plaintiff to show that she was deprived of the aid and comfort of the husband's brother; it was also proper to permit her to show that she had no means with which to prepare her husband's body for burial, that it was prepared by others, and that she desired his brother's presence for the purpose of assisting her in the preparation of the body.

2. *Same.*—Where the message which failed to be delivered announced the death of the sendee's husband to a brother of the deceased husband, and requested his presence and assistance, it did not convey any information to the company that the plaintiff had two small children who needed their uncle's assistance, and hence, plaintiff was not entitled to show that she had two small children and that they and she were deprived of the presence of the brother; if defendant would be liable on that account, it would be liable to the children rather than the mother.

3. *Same; Damages.*—Where the message announcing the death of her husband to a brother of the husband, was not delivered, but the wife, the plaintiff had no knowledge of the failure to deliver until the arrival of the brother in law whatever damages she suffered for mental pain and anguish must have resulted from the failure of the brother in law to be with her after the time he could and would have arrived had the message been promptly sent and delivered up to the time at which he actually did arrive.

4 *Same; Evidence.*—Where the action was by the sender of the death message against the company for a failure to deliver, a conversation between the sendee and the agent of the telegraph office, whose business it was to receive and deliver it, as to whether he received it and as to whether he attempted to deliver it, was properly admitted.

5. *Evidence; Declarations; Res Gestae.*—In an action against a telegraph company for failure to deliver a message, a statement made by the agent of the company charged with the duty of receiving and delivering the message, that he had been paid a certain sum for the delivery of the message, was not admissible as it was not shown that such amount was paid to him by anyone connected with the contract, and at most it was a mere declaration as to a by-gone transaction, and not part of the res gestae; nor was it admissible for the purpose of impeaching the witness.

6. *Appeal and Error; Harmless Error; Admission of Evidence.*— Where there was no dispute as to the contents of the message, and the dictation by the sender to the agent being the same as what the agent read to the sender, and being the same as the message sent, if there was any error in permitting the sender to testify as to what she dictated to the agent to write as a message, and what he read off to her after he had written it, was clearly without injury.

APPEAL from Etowah Circuit Court.

Heard before Hon. JOHN W. INZER.

Action by Jane West against the Western Union Telegraph Company, for failure to deliver a message. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GOODHUE & BLACKWOOD, for appellant.—Plaintiff was not entitled to recover any damages growing out of the absence of her brother-in-law.—*W. U. T. Co. v. Ayres*, 131 Ala. 391. The court erred in the admissions of evidence by the plaintiff.—Joyce on Electric Law, Sec. 819. The statement by Dodson as to what had been paid him for the delivery of the message was res inter alios acta and inadmissible.—*A. G. S. v. Hawk*, 72 Ala. 112; *Tanner v. L. & N.*, 60 Ala. 621.

CULLI & MARTIN, for appellee.—Damages for mental anguish were recoverable.—*W. U. T. Co. v. Long*, 41 South. 967; *Same v. Haley*, 143 Ala. 586; *Same v. Ayres*, 131 Ala. 391; *Same v. Henderson*, 89 Ala. 510. The fact that it was made on Sunday did not render the contract void.—*W. U. T. Co. v. Wilson*, 93 Ala. 32.

MAYFIELD, J.—Plaintiff sues the telegraph company to recover damages for its failure to promptly send and deliver a telegram sent by her to her brother-in-law, announcing the death of her husband. The message was as follows: "W. H. West, Blue Pond, Ala. Your brother was killed last night, come at once, assistance needed.  Jane West."

The case made by the evidence was practically as follows: The evidence showed that in Attalla, on the night of the 9th of March, 1907, plaintiff's husband was shot and killed. The 9th of March was on Saturday. On Sunday morning between 7 and 8 o'clock, according to some of the evidence, and at a later hour according to other testimony in the case, two ladies, acting on behalf of the plaintiff, delivered the above message to one Long, the agent of the telegraph company, and paid him the charges for transmitting the same. W. H. West lived at or near Blue Pond, Ala.; in fact, about three-quarters of a mile from Blue Pond. He testified that he never received the telegram. At Attalla an inquest was held, and the body of Mr. West was brought to plaintiff's house about 2 o'clock Sunday afternoon. Soon after the body arrived at the house, the employer of Mr. West came to the house and said that he would send up a coffin, without waiting for the brother to arrive. There were friends present, neighbors came in, the body was properly prepared for burial, and was, within about an hour after being brought to the house, placed in the coffin which had been sent in. The evidence shows that, if West had received the telegram promptly, he would have reached Attalla at 10:30 o'clock on Sunday night. In fact, he did reach Attalla between 1 and 12 o'clock Monday morning. Two men went from Attalla to Blue Pond, on the train early monday morning, and told W. H. West about his brother being killed. He then caught the train at Blue Pond and reached Attalla, as stated above. When W. H. West reached the house of plaintiff on Monday morning, the body had been properly prepared for burial—about which fact there is no dispute. Everything was done Sunday afternoon about preparing the body for burial. W. H. West paid the expenses of getting to Blue Pond with the body Tues-

26—165

day morning on the Rome & Decatur Railroad. The body was interred in the family burial ground, at Blue Pond, on Tuesday morning. Will West was with his sister-in-law, at the burial of her husband.

We find no error in the ruling of the court in striking certain parts of the complaint; but the court, after striking certain parts of the complaint, on defendant's motion, seems to have allowed proof of practically the same matters stricken, to wit, the allegation that "plaintiff had two little children," and that "she and her two children were deprived of the comfort (the presence and assistance) of her brother-in-law," were stricken, yet the court allowed proof thereof over defendant's objections and exceptions. In this the court erred. It was proper for plaintiff to prove that she was deprived of the aid and comfort of her brother-in-law, because the message gave notice to the defendant that she was calling upon her brother-in-law for aid and comfort in the hour of her sore distress and need, and that his assistance was needed. But it did not convey any information to the company that she had two small children, and that they needed their uncle's assistance. If they did so need it, there was no evidence, or allegation, that defendant or its agents knew it, or that they could have had this in contemplation when undertaking to promptly send and deliver the message. If it had been so advised, and if the company would be liable in damages on that account, it would be to the children, and not to the mother. In this action she can only recover such damages as she suffered, and not such as the children may have suffered.

It was proper for the plaintiff to prove that she had no means with which to prepare her husband's body for burial, that it was so prepared by others, and that it was for this purpose that she desired her brother-in-

law's presence. The message put the telegraph company on notice as to this. What we have said above was as to the rulings of the court on the admissibility of the evidence. The evidence, however, showed that the body was properly prepared for burial before plaintiff's brother-in-law could have possibly arrived; consequently, plaintiff could have suffered no damages on account of the delay or of the absence of her brother-in-law, so far as preparing the body for burial was concerned.

It also appears that plaintiff had no knowledge of the failure to deliver until her brother-in-law arrived; so whatever damages she suffered, recoverable in this action, as for mental pain and anguish, must have resulted from the failure of her brother-in-law to be with her after the time he could and would have arrived had the message been promptly sent and delivered, and before the time at which he actually did arrive. As to the arrangements for the shipping and burial of the body, these were made by the brother-in-law after he arrived; but his absence during this interval may have caused her to suffer mental pain and distress. This is, of course, upon the theory that he could and would have arrived sooner had the message been delivered promptly; but it is not exactly certain from this record that her brother-in-law could have arrived sooner had the message been promptly delivered. While the evidence shows that there was a train leaving his home station at an earlier hour, which he could have taken had the message been promptly delivered, and that if he could have taken this train he would have arrived at plaintiff's home sooner, yet the evidence, or a part of it, tends to show that this particular train did not run on Sundays, and the evidence indisputably shows that the message was sent on Sunday; so it does not clearly appear

that he could have arrived any sooner had the message been promptly delivered. However, all the evidence leaves it uncertain as to this, and it seems to be conceded by counsel that he could have arrived sooner had the message been promptly delivered.

The evidence as to the conversation between the witness West, the sendee of the message, and Dodson, the agent of the telegraph company, whose business it was to receive and deliver it, as to whether or not he received it, and whether or not he attempted to deliver it, was proper. This was the only proper source, through which the sendee could obtain this information, to which he was clearly entitled. As to these matters, the defendant company could only act through this particular agent, and it is, of course, bound therein by his statements and actions, because they are within the line and scope of his authority; but the statement that he had been paid $3 for the delivery of the message in question was not admissible against the defendant company. It was not claimed nor shown that such amount was paid to him by any of the parties to the contract or transaction involved in this suit. This, at most, was a mere declaration of the agent as to bygone transactions, and not a part of the res gestæ of the transaction.—2 Mayfield's Dig. p. 59. It was not offered for the purpose of impeaching or contradicting the witness Dodson, and, if not wholly immaterial, it would not be admissible for this purpose, even had it been so offered.

The counts of the complaint as to which demurrers were overruled were not subject to any ground of demurrer leveled against them.

There was no error in allowing the witness to testify as to what she dictated to the agent to write as the message, and what he read off to her after he had written the message. What she dictated and what he read being

[Marsicano v. City of Birmingham.]

the same, and that being the same as the message sent, and there being no dispute as to the contents of the message, if error, it was without injury.

The judgment is reversed, and the cause is remanded. Reversed and remanded.

SIMPSON, ANDERSON, and McCLELLAN, JJ., concur.